# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUAN CARLOS MURILLO-FIGUEROA,<br><br>Defendant. | No. CR12-4022-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

This matter is before the court on the defendant's motion to suppress. Doc. No. 10. The government filed a resistance. Doc. No. 11. The motion has been assigned to the undersigned for a report and recommendation.

On April 23, 2012, the court held an evidentiary hearing on the defendant's motion. The defendant, Juan Carlos Murillo-Figueroa, appeared in person with his attorney, F. Montgomery Brown. Assistant United States Attorney Shawn Wehde appeared on behalf of the government. The government offered the testimony of Special Agent Chris Nissen of the Iowa Division of Narcotics Enforcement ("DNE") and Crawford County Deputy Sheriff Todd Perdew. The defendant did not call any witnesses. Government's Exhibit 1, a video of the defendant's February 7, 2012, traffic stop; Government's Exhibit 2, photographs of the defendant's vehicle; and Defendant's Exhibit A, a transcript of the recording of the defendant's February 7 traffic stop, were admitted into evidence.

## *Background*

At all times relevant to this discussion, the defendant resided in Storm Lake and worked in Denison, Iowa. According to Agent Nissen, Iowa law enforcement had received information from a confidential informant ("CI") that the defendant was involved

in the distribution of methamphetamine. Agent Nissen arranged and accompanied the CI on three controlled one-ounce purchases of methamphetamine from the defendant on the evenings of November 10 and 28, 2011, and January 19, 2012.

On January 23, 2012, Agent Nissen obtained a search warrant to install a global positioning system tracking device on the defendant's vehicle, and installed the device on the defendant's pickup truck the following day. About a week later, Agent Nissen had a discussion with the CI about getting a greater amount of methamphetamine from the defendant to help law enforcement identify the defendant's source of supply. The CI later told Agent Nissen that he had contacted the defendant about obtaining four ounces of methamphetamine.

On February 7, 2012, through their GPS monitoring and visual surveillance, agents followed the defendant's vehicle as it traveled from Denison, Iowa, to Omaha, Nebraska. In Omaha, agents observed the defendant stop at a Walgreens parking lot, exit his vehicle, and get into a Nebraska-registered Jeep Cherokee. The defendant then was seen leaving in the Jeep and returning a short time later. According to Agent Nissen, this was consistent with a subject obtaining illegal controlled substances from a source of supply. After returning to his pickup, the defendant was observed by agents returning to the Denison, Iowa, area on Highway 59.

DNE agents contacted Deputy Todd Perdew of the Crawford County Sheriff's Department and Deputy Kent Gries, a canine handler with the Audubon County Sheriff's Department, for assistance in stopping the defendant's vehicle on Highway 59 for any traffic violations. According to Agent Nissen, agents intended to stop the defendant's vehicle before he arrived in Denison even if no traffic violations occurred. At about 7:00 p.m., Deputy Perdew located and followed the defendant's vehicle traveling northbound on Highway 59 south of Denison. He testified he observed numerous air fresheners

hanging from the rear view mirror, so he initiated a traffic stop based on his belief that the air fresheners obstructed the driver's view.

Deputy Perdew got out of his cruiser and approached the pickup on the driver's side, where he requested the defendant's license. He explained to the defendant that he had been stopped because the air fresheners hanging from the rear view mirror obstructed the driver's vision, and that this constituted a violation of Iowa law. About this time, Deputy Gries arrived at the scene with his drug dog. Deputy Perdew asked the defendant to step back to the cruiser with him for the records checks and a pat down for weapons, and the defendant complied. Deputy Perdew performed the checks on the defendant's license and documents, and gave the defendant a verbal warning for the air fresheners. Deputy Perdew then requested permission for Deputy Gries to run his drug detection dog around the defendant's vehicle, and the defendant agreed. Deputy Gries deployed his drug dog around the vehicle, and the dog alerted on the driver's door. The deputies then performed a search of the vehicle and found suspected methamphetamine in the pocket of a jacket inside the passenger compartment. The defendant was detained and later arrested on the basis of the drugs seized from the jacket. The defendant consented to the transport of his vehicle to the Iowa State Patrol ("ISP") post in Denison. The defendant then was also transported to the ISP post in Denison, where Agent Nissen conducted a post-*Miranda* interview of the defendant.

On February 22, 2012, an indictment was returned against the defendant, charging him with conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Doc. No. 2. On March 12, 2012, the defendant filed a motion to suppress evidence obtained as a result of the February 7 traffic stop.[1]  Doc. No. 10.

---

[1] The defendant also sought to suppress his post-*Miranda* custodial statements.
(continued…)

*Discussion*

The defendant contends that the traffic stop of his vehicle on February 7, 2012, was without probable cause. Doc. No. 10-1 at 4-7. The government maintains that probable cause was provided by the presence of multiple air fresheners hanging from the vehicle's rear view mirror in violation of Iowa Code section 321.438(1), which provides that "[a] person shall not drive a motor vehicle equipped with a windshield . . . which do[es] not permit clear vision." Alternatively, the government asserts that "law enforcement had probable cause to stop, search, seize, question, and arrest defendant based on probable cause established prior to the traffic stop." Doc. No. 11 at 1.

The traffic stop was lawful if law enforcement had either a reasonable suspicion or probable cause to believe that a crime was being committed.

> A traffic stop is a seizure within the meaning of the Fourth Amendment and, as such, must be supported by reasonable suspicion or probable cause. A law enforcement officer has reasonable suspicion when the officer is aware of "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." The more rigorous standard of probable cause exists when the totality of the circumstances justifies the belief that a crime has been committed and the person being seized committed it. In the context of a traffic stop, "[a]ny traffic violation, however minor, provides probable cause."

*United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008) (alteration in original) (citations omitted). "This is true even if a valid traffic stop is a pretext for other investigation." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002) (citing *Whren v. United States*, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1773-74 (1996)).

---

[1](…continued)
Doc. No. 10 at 2. At the hearing, the parties agreed to bifurcate the issue of suppression of the defendant's custodial statements, with there to be a separate hearing in the event the court found the traffic stop to be illegal.

The validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances. *United States v.. Smart*, 393 F.3d 767, 770 (8th Cir. 2005). Even if the officer was mistaken, "the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." *Id.*; *accord United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005). Although any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver, the police must objectively have a reasonable basis for believing that the driver has breached a traffic law. *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006); *accord United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999).

The court finds that Deputy Perdew's belief that the defendant's air fresheners in his vehicle violated Iowa Code section 321.438(1) was not objectively reasonable. Photographs of the defendant's vehicle taken after its seizure indicate that four or five air freshener "trees" three or four inches in length hung from the rearview mirror of the defendant's vehicle. *See* Doc. No. 19 (Gov't Ex. 2). The air fresheners did not extend beyond the width of the rearview mirror. These did not prevent a "clear vision" through any of the vehicle's windows. Deputy Perdew did not have probable cause to stop the defendant's vehicle based on an obstructed windshield on February 7, 2012.

Alternatively, the government contends that there was probable cause, or at least a reasonable suspicion, justifying law enforcement to stop the defendant's vehicle based on the circumstances surrounding the defendant's drug-dealing activities leading up to the stop. The court agrees. The totality of circumstances in this case justified law enforcement's belief that the defendant had obtained methamphetamine from a suspected drug source in Omaha, and that at the time of the stop he was transporting the drugs in his vehicle. Before the February 7 traffic stop, Agent Nissen had observed a CI obtain drugs from the defendant on three previous occasions through controlled purchases. The CI confirmed to Agent Nissen he had contacted the defendant shortly before February 7 about

5

obtaining a larger quantity of methamphetamine. Through lawful electronic surveillance, DNE agents monitored the defendant's travels from Denison to a parking lot in Omaha, where he entered another vehicle, left, and then returned, and then traveled back toward Denison. These circumstances provided probable cause for law enforcement to believe that the defendant was transporting drugs in his vehicle.

In any event, law enforcement at least had a reasonable suspicion to conduct an investigatory traffic stop. *See United States v. Walker*, 555 F.3d 716, 719 (8th Cir. 2009). In *United States v. Jacobsen*, 391 F.3d 904, 905 (8th Cir. 2004), an agent received information from a confidential informant that the defendant had obtained cocaine in Minnesota and had returned to his home in South Dakota. Detectives at the defendant's home observed a man leaving the home carrying a small brown bag and driving away in the defendant's truck. The agent believed (incorrectly) that the bag contained controlled substances, so he instructed the detectives to pull the truck over.

> Rather than do so themselves, one detective described the vehicle to a patrol officer. The officer was given no information about the investigation, except that narcotics detectives needed help stopping the truck. After pulling over the truck, the officer implied that the license-plate light was not illuminated. (Videotape taken from the officer's car shows the light was working.) The officer determined that the man was [the defendant] and detained him 10 to 15 minutes.

*Jacobsen*, 391 F.3d at 905. A detective arrived at the scene of the stop and began questioning the defendant, who gave false and evasive answers to the detective's questions. A canine officer was called and arrived within 40 minutes. The dog alerted to the vehicle, where methamphetamine and cocaine were found.

The court in *Jacobsen* determined that because the agent "had reasonable suspicion that criminal activity was afoot, and because narcotics detectives instructed the patrol officer to make the stop, the officer's false statement about the burned-out light [did] not matter." *Id.* at 906. "An investigative stop of a vehicle does not violate the Fourth

6

Amendment where the police have a reasonable suspicion that the occupant of the vehicle is engaged in criminal activity. 'There is no requirement that there be a traffic violation.'" *Id.* at 906-07 (quoting *United States v. Briley*, 319 F.3d 360, 364 (8th Cir. 2003)) (citation omitted). "The patrol officer himself need not know the specific facts that caused the stop. Rather, the officer need only rely upon an order that is founded on reasonable suspicion." *Id.* at 907 (citation omitted). Because the order to stop the defendant's vehicle was based on articulable facts supporting reasonable suspicion, the court in *Jacobsen* affirmed the district court's denial of the defendant's motion to suppress evidence.

Here, the DNE's request to deputies to stop the defendant's vehicle was based on reasonable suspicion that the defendant had obtained and was in possession of methamphetamine. The circumstances of this case permitted law enforcement to infer rationally that the defendant had obtained methamphetamine in Omaha and to stop the defendant's vehicle afterwards in Iowa to conduct an investigation. During the investigatory stop, the defendant consented to the use of a drug detection dog on his vehicle. The dog's positive alert provided probable cause to search the vehicle, *see United States v. Bowman*, 660 F.3d 338, 345 (8th Cir. 2011), which resulted in the discovery of methamphetamine and the arrest of the defendant.

For the foregoing reasons, the defendant's motion to suppress should be **denied**.

## *Recommendation*

IT IS RESPECTFULLY RECOMMENDED that the defendant's motion to suppress evidence from the stop of his vehicle be **denied**. Objections to this Report and Recommendation must be filed by **April 30, 2012**. Responses to objections must be filed by **May 2, 2012**.

IMPORTANT NOTE: Any party planning to lodge an objection to this Report and Recommendation must order a transcript of the hearing promptly, but not later than

**April 27, 2012, regardless of whether the party believes a transcript is necessary to argue the objection**.  If an attorney files an objection without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 26th day of April, 2012.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT